### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

WANDA KYLER,

        *Plaintiff*,

    v.

KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*,

        *Defendant*.

Civil Action No. 1:19-cv-03334 (CJN)

### <u>MEMORANDUM OPINION</u>

Wanda Kyler seeks reversal of the Social Security Administration's denial of her claims for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401–433. Kyler contends that the Administrative Law Judge applied the wrong law and that the decision is not supported by substantial evidence. *See generally* Pl.'s Mot. for Judgment of Reversal ("Pl.'s Mot."), ECF No. 13. The Administration argues that the Court should affirm the decision. *See generally* Def.'s Mot. for Judgment of Affirmance ("Def.'s Mot."), ECF No. 14. Upon consideration of the motions and the administrative record, the Court will deny Kyler's motion for judgment of reversal and grant the Administration's motion for judgment of affirmance.

### I.      Statutory Framework & Legal Standards

The Social Security Act of 1935 established a framework to provide "disability insurance benefits" to eligible claimants. 42 U.S.C. § 423(a)(1)(A). The Act defines "disability" in pertinent part as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §

1

423(d)(1)(A).  To establish eligibility for disability-based benefits, the claimant must show that she has met the statutory definition of disability prior to her "date last insured."  *See* 42 U.S.C. § 423; 20 C.F.R. § 404.101; *Kathy R. v. Comm'r of Soc. Sec.*, No. 6:19-CV-385, 2020 WL 1862967, at \*4 n.4 (N.D.N.Y. Apr. 14, 2020) (noting that the "date last insured" "is a technical term used . . . to mark the last day on which a claimant is eligible for" disability benefits).  The time between the alleged disability onset-date and the date last insured represents the operative timeframe, also known as the "relevant period," for purposes of deciding an individual's claim for disability benefits.  *See Shimanek v. Kijakazi*, No. CIV-20-417-J, 2022 WL 896817, at \*3 (W.D. Okla. Mar. 10, 2022); *Cauthen v. Saul*, 827 F. App'x 444, 446 (5th Cir. 2020) (noting that "disability evidence completely unrelated to the relevant period is irrelevant to adjudication of the claim").

A multi-layered administrative process undergirds an individual's claim for disability benefits.  *See Carr v. Saul*, 141 S. Ct. 1352 (2021).  A claimant must first seek an initial determination.  20 C.F.R. § 404.900(1).  If unsatisfied with the outcome, the claimant may seek reconsideration.  *Id.* § 404.900(2).  Where the claimant finds fault with the reconsideration determination, the claimant may "request a hearing before an  administrative law judge."  *Id.* § 404.900(3).

The Commissioner of Social Security has promulgated regulations outlining a five-step process that applies at each stage, including before the ALJ.  *See* 20 C.F.R. § 404.1520; *Dowell v. Colvin*, 232 F. Supp. 3d 1, 5 (D.D.C. 2017).  At step one, a claimant is not disabled if the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Substantial gainful activity includes work for pay or profit requiring significant mental or physical ability.  *Id.* § 404.1572(a)-(b).

At step two, and only if the claimant is not engaged in substantial gainful activity, the ALJ determines whether the claimant has a "severe medically determinable physical or medical impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement." *Id.* § 404.1520(a)(4)(ii).  To meet the duration requirement, a severe impairment or combination thereof "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§ 404.1509, 416.909.

At step three, and only if the claimant suffers from a severe impairment, the ALJ assesses whether the impairment "meets or equals one of the listings [of impairments]." *Id.* § 404.1520(a)(4)(iii).  The listings of impairments describe impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* § 404.1525(a).  If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are equivalent to a listing, *id.* § 416.926, the claimant counts as disabled, *id.* § 416.920(d); *see also Cunningham v. Colvin*, 46 F. Supp. 3d 26, 29 (D.D.C. 2014) (noting that where the ALJ finds that the claimant suffers from an impairment that meets one of those listed, then, the claimant qualifies as disabled, ending the inquiry at step three).  The medical criteria defining the listed impairments has been set "at a higher level of severity than the statutory standard" for disability.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

At step four, and only if the claimant does not satisfy one of the listed impairments, the ALJ will evaluate the claimant's "residual functional capacity." *Id.* § 404.1520(a)(4)(iv); *see also Id.* § 404.1545(a)(1) (defining "residual functional capacity" as "the most you can still do despite your limitations").  After evaluating the claimant's residual functional capacity, the ALJ will assess whether the claimant has shown that she cannot perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv).

At step five, and only if the claimant cannot perform her past relevant work, the ALJ evaluates the claimant's residual functional capacity, "age, education, and work experience to see if [the claimant] can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If a claimant can make a feasible adjustment, then she is not disabled; a finding that there are no feasible adjustments results in a finding that the claimant is disabled. *Id.*; *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (noting that the claimant bears the burden on the first four steps, whereas the Administration bears the burden on the fifth step).

In performing this five-step process, the ALJ "must adhere to certain regulatory requirements." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021). The ALJ must consider the "objective medical evidence from an acceptable medical source," medical opinions, and the claimant's subjective statements. 20 C.F.R. § 416.929(a). More weight must be accorded to physicians who have treated and examined the claimant. *Id.* § 404.1527(c)(1), (c)(2).

Assuming the claimant disagrees with the ALJ's conclusion, the claimant may request review by the "Appeals Council." *Id.* § 404.900(4). If the claimant is dissatisfied with the Appeals Council's determination, the claimant may seek judicial review. *Id.* § 404.900(5); 42 U.S.C. § 405(g) (noting that a claimant may seek judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which [she] was a party").

The Administration's determination will not be disturbed if it is supported by substantial evidence and when the Administration applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c); *see also Thigpen v. Colvin*, 208 F. Supp. 3d 129, 138 (D.D.C. 2016). The substantial-evidence standard is "highly deferential." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (Kavanaugh, J.) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). As the Supreme Court recently noted, the substantial-evidence standard does not present a high bar.

*See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, it "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Reversing an agency decision under the standard "is rare."  *Rossello*, 529 U.S. at 1185.  And even if the Court perceives error, the Court will affirm the Administration's decision under the harmless-error standard unless prejudicial error is afoot.  *See Saunders*, 6 F.4th at 4.

## II.     Facts & Procedural Background

Wanda Kyler performed clerical duties as a school office manager from 1995 through most of 2003, and she worked in customer service at a call center for the rest of 2003.  *See* Administrative Record ("AR"), at 423.  Approximately eight years later, Kyler filed an application for disability insurance benefits with the Social Security Administration.  *Id.* at 60.  In her application, Kyler claimed that she became disabled on September 1, 2004, on the basis of obesity, asthma, arthritis, hypertension, fatigue, shortness of breath, carpal tunnel syndrome, and knee problems.  *Id.* at 122, 156.

In February 2012, a disability adjudicator determined that Kyler did not qualify for disability benefits.  *Id.* at 58.  To reach that determination, the adjudicator considered Kyler's "medical records," her "statements," and how her "condition[s] affected [her] ability to work."  *Id.* at 59.  A month later, the Administration upheld the determination upon reconsideration.  *Id.* at 61.

Soon after, Kyler requested a hearing before an Administrative Law Judge.  *Id.* at 10.  After consideration of the record, the ALJ determined that Kyler did not have an impairment or combination of impairments that fell within those listed in the applicable regulation.  *Id.* at 15.  The ALJ also found that Kyler had the residual functional capacity to perform sedentary work with some exceptions and that Kyler could perform similar past relevant work.  *Id.* at 16.  Kyler

appealed to the Appeals Council.  *Id.* at 1.  But the Appeals Council found no reason to review the ALJ's decision.  *Id.* at 2.  Kyler sought judicial review.  *See Kyler v. Comm'r of Soc. Sec. Admin.*, 46 F. Supp. 3d 1 (D.D.C. 2014).  Judge Huvelle reversed the ALJ's decision and remanded for further consideration of Kyler's alleged impairments.  *See generally id.*

In March 2015, a second ALJ conducted an administrative hearing, AR at 456, and decided almost two months later that Kyler did not suffer from a disability for purposes of receiving disability benefits, *id.* at 420.  In particular, the ALJ found that Kyler did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.*  The ALJ also found that Kyler possessed the residual functional capacity to perform some sedentary work with certain added limitations.  *Id.*  Kyler appealed to the Appeals Council, *id.* at 397, which again found no reason to review the ALJ's decision, *id.* at 399.  Kyler again sought judicial review.  Magistrate Judge Harvey recommended that the ALJ's decision be reversed and that the matter be remanded for further consideration of Kyler's alleged impairments and residual functional capacity to perform certain work.  *See Kyler v. Berryhill*, No. 116CV1271RBWGMH, 2017 WL 10241530, at *11 (D.D.C. Dec. 19, 2017).  Judge Walton adopted the report and recommendation in full.  *See* AR at 1866.

In June 2019, a third ALJ conducted an administrative hearing, *id.* at 1213, and ultimately determined that Kyler did not have an impairment or combination of impairments that met the severity of one of the listed impairments, *id.* at 1197–1199.  The ALJ also found that Kyler "had the residual functional capacity to perform sedentary work . . . except could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs and crawl; and must avoid concentrated exposure to extreme cold and heat, wetness, humidity, and fumes, odors, dusts, and gases."  *Id.*

6

Kyler seeks review of that decision pursuant to 42 U.S.C. § 405(g). In her motion for reversal, Kyler argues that the decision is based on a legal error and is not supported by substantial evidence. *See generally* Pl.'s Mot. In particular, Kyler argues that the ALJ applied the wrong legal standard in evaluating Kyler's alleged impairments at step three of the sequential evaluation process, *id.* at 4, and that the ALJ's decision regarding Kyler's residual functional capacity is not based on substantial evidence, *id.* at 9.

### III.     The ALJ Applied the Correct Legal Standard at Step Three

Recall that step three requires an ALJ to assess whether a claimant's impairment "meets or equals one of the listings," 20 C.F.R. § 404.1520(a)(4)(iii). Recall, too, that the listings refer to a list of "impairments that [the ALJ] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience," 20 C.F.R. § 404.1525(a).

Up until October 7, 2016, Listing 3.03B stated that an individual suffered from debilitating asthma when that individual experienced "[e]pisodes of severe attacks," "in spite of prescribed treatment and . . . physical intervention, occurring at least once every 2 months or on an average of at least 6 times a year." *Kyler v. Berryhill*, No. 116CV1271RBWGMH, 2017 WL 10241530, at *8 (D.D.C. Dec. 19, 2017) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03B (2015)). The Listing further provided that each "in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and [that] an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks." *Id.*

On June 9, 2016, however, the Administration published a modified rule, effective October 7, 2016, revising the listing of impairments for claims involving respiratory disorders. *See Revised Medical Criteria for Evaluating Respiratory System Disorders*, 81 FR 37138 (effective October 7,

2016).   The revised listing states that "[e]xacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart [count] (the 12-month period must occur within the period we are considering in connection with your application or continuing disability review).   Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization."  *Id.* at 37148.

In July 2019, the ALJ compared Kyler's impairments against the version of Listing 3.03(B) effective after October 7, 2016.  *See* AR at 1198.  In his decision, the ALJ noted that, at the administrative hearing, "the claimant's representative acknowledged that the claimant's impairments, alone or in combination, did not meet listing 3.03, as currently written, through the date last insured because she did not have the requisite number of hospitalizations."  *Id.*  The ALJ also declined to consider whether Kyler satisfied the criteria of the respiratory impairment listing as it existed before October 7, 2016.  *Id.*

Kyler argues that the ALJ committed legal error when he applied the version of Listing 3.03(B) effective after October 7, 2016, rather than the prior version.  *See* Pl.'s Mot. at 5.  In particular, Kyler contends that the application of the revised criteria to Kyler's application for disability benefits constitutes "impermissible retroactive rulemaking."  *Id.* at 6.[1]  Kyler's argument misses the mark.

Under what is known as the "presumption against retroactivity," courts presume that new laws "operate prospectively only, to govern future conduct and claims, and do not operate

---

[1] Kyler also contends that she satisfied the criteria for Listing 3.03(B) in effect before October 7, 2016.  *See* Pl.'s Mot. at 7.  The Court need not address this argument because the ALJ properly applied the criteria for Listing 3.03(B) effective after October 7, 2016, and because Kyler does not argue that she satisfied the revised criteria. Indeed, Kyler conceded that she cannot satisfy the criteria for the current version of the Listing.  *See* AR at 1222.

retroactively, to reach conduct and claims arising before" the law's enactment.  *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 172 (4th Cir. 2010) (Wilkinson, J.); *De Niz Robles v. Lynch*, 803 F.3d 1165, 1169 (10th Cir. 2015) (Gorsuch, J.); *see Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (noting that unambiguous congressional instruction will overcome the presumption).  The presumption extends beyond statutes:  an agency may not promulgate a retroactive regulatory rule absent express congressional authorization.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

Where a statute contains no unambiguous instruction commanding retroactivity, courts must decide whether application of the new rule would have retroactive effect.  *See Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011) (Wilkinson, J.).  Congress has not authorized the Social Security Administration to promulgate retroactive rules.  *See* 42 U.S.C. § 405(a); *Nat'l Min. Ass'n v. Dep't of Lab.*, 292 F.3d 849, 859 (D.C. Cir. 2002) (per curiam).  The question, then, is whether the new rule, if applied here, operates retroactively.  *See Cox v. Saul*, No. 118CV02389KBJGMH, 2020 WL 9439356, at *7 (D.D.C. Sept. 1, 2020).

Application of new law operates retroactively if it "would attach new legal consequences to events completed before its effective date."  *Metroil, Inc. v. ExxonMobil Oil Corp.*, 672 F.3d 1108, 1113 (D.C. Cir. 2012) (Kavanaugh, J.); *Bergerco Canada, a Div. of Conagra, Ltd. v. U.S. Treasury Dep't, Off. of Foreign Assets Control*, 129 F.3d 189, 192 (D.C. Cir. 1997) (application of new law would have retroactive effect if it "chang[es] the legal rights flowing from previous acts").  The application of new law attaches legal consequences to a completed event if it impairs a party's vested right, imposes new duties on a party with respect to completed transactions, or increases a party's liability for past conduct.  *See Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794, 798 (D.C. Cir. 2011) (Kavanaugh, J.)

(citing *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006)); *see also Celtronix Telemetry, Inc. v. F.C.C.*, 272 F.3d 585, 589 (D.C. Cir. 2001) (noting that the arbitrary and capricious standard apples to "secondary retroactivity"—*e.g.*, a new regulation that makes worthless substantial investment incurred in reliance upon the prior rule).

Application of the revised regulation does not increase Kyler's liability for past conduct. *See Bartko v. Sec. & Exch. Comm'n*, 845 F.3d 1217, 1223 (D.C. Cir. 2017).  Nor does application of the revised regulation impose new duties on her.  *See Quantum Ent. Ltd. v. U.S. Dep't of Interior*, 714 F.3d 1338, 1343 (D.C. Cir. 2013).

But does application of the revised regulation impair one of Kyler's vested rights?  *See Bergerco Canada, a Div. of Conagra, Ltd. v. U.S. Treasury Dep't, Off. of Foreign Assets Control*, 129 F.3d 189, 193 (D.C. Cir. 1997) ("[W]e must ask whether the legal status quo ante created 'rights' favorable to [Kyler] and later modified."); *Abington Mem'l Hosp. v. Burwell*, 216 F. Supp. 3d 110, 142 (D.D.C. 2016) (noting that "if a regulated party's rights have not yet vested with respect to particular conduct—*i.e.*, if the former legal consequences of his act have not attached before the rule change—the agency's application of a changed rule that alters the legal consequences of the prior conduct operates only prospectively"); *see also* Geoffrey C. Weien, *Retroactive Rulemaking*, 30 HARV. J.L. & PUB. POL'Y 749, 763 (2007) ("The key recurring question in [retroactive-rulemaking] challenges is whether the plaintiff had a right that the agency attempted to eliminate or impair.").

Pending claims that rest on statutes or regulations "are contingent, and the rules may change" until the right under the statute or regulation "may be said to vest." *McCavitt v. Kijakazi*, 6 F.4th 692, 694 (7th Cir. 2021) (Easterbrook, J.).  Disability benefits under the Social Security Act are non-vested benefits "and do not become vested until one has actually established his

eligibility." *Harris v. Richardson*, 468 F.2d 1260, 1260 (9th Cir. 1972) (per curiam); *Flemming v. Nestor*, 363 U.S. 603, 610 (1960) ("To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands."). That makes sense, as "[d]isability benefits are not designed to encourage people to acquire disabilities or reward them for doing so; limits on a federal subsidy differ from penalties." *McCavitt*, 6 F.4th at 694. Here, of course, Kyler did not become impaired in reliance on the old regulation. Because Kyler had no vested right to disability benefits and because she "did not rely on the pre-existing state of the law to [her] detriment," the prior regulation may apply, "even if it is unfavorable to" Kyler's pending claim. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 373 (4th Cir. 2021).

The Court draws support for its conclusion from *Combs v. Commissioner of Social Security*, 459 F.3d 640, 641 (6th Cir. 2006) (en banc). The en banc court in *Combs* faced the question whether the Administration erred when it refused to apply an old regulation to a claimant's application for disability benefits. *See generally id.* The applicant filed the claim three years before the Administration eliminated the old regulation, which contained criteria favorable to the applicant's claim. *Id.* A majority of the en banc court, however, concluded that declining to apply the old regulation was not retroactive. *See BellSouth Telecommunications, Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 663 (6th Cir. 2006) (unpacking and applying the en banc decision). A seven-judge plurality determined that the new rule regulated procedure rather than substance and therefore posed no retroactivity problem. *Combs*, 459 F.3d at 642–48. The opinion concurring in the judgment, which provided the necessary eighth vote to affirm, decided that application of the new rule did not have retroactive effect because the applicant "had no settled expectation—let

11

alone a vested right—in the use of the substantive regulations in force when she filed her disability claim." *Id.* at 654 (Gilman, J., concurring in the judgment).

*National Mining Association v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002) (per curiam) does not compel a different result. In that case, a mining association argued that applying certain revised regulations to the adjudication of pending claims brought by coal miners under the Black Lung Benefits Act represented impermissible retroactive rulemaking. *Id.* at 859. That Act provides disability benefits to miners by shifting risk and liability onto the mining industry. *Id.* One of the revised regulations created a rebuttable presumption in favor of the applicant, *id.* at 865, while a second expanded the scope of an employer's liability, *id.* at 867. The Court of Appeals held that the application of both revised regulations was retroactive. *Id.* at 868.

That case is distinguishable from this one for at least two reasons. First, it involved the possibility of saddling private individuals with additional liability for past conduct. *See id.* at 859 (noting that where a "rule changes the legal landscape in a way that affects *substantive liability determinations* . . . it may operate retroactively") (emphasis added); *see also Nat'l Cable & Telecommunications Ass'n v. F.C.C.*, 567 F.3d 659, 670 (D.C. Cir. 2009) (casting doubt on the scope of the Court of Appeals' holding in *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849 (D.C. Cir. 2002)). As Judge Gilman put it, one "regulation increased the likelihood that mining companies would be held liable for past conduct, whereas the [second] altered the amount that the companies would be required to pay in the event that they were found liable." *Combs*, 459 F.3d at 655 (Gilman, J., concurring in the judgment); *see also id.* at 650 n.3. Here, by contrast, the revised regulation makes it more difficult for a private individual to obtain a government benefit. *See McCavitt*, 6 F.4th at 694. Second, Kyler possessed no "settled expectations" that the old regulation would apply to her pending claim because Congress has reserved the right to alter, amend, or repeal

any provision of the Social Security Act at any time. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575, 575 n.6 (1979) (noting that the Social Security Act provides: "The right to alter, amend, or repeal any provision of this [Act] is reserved to the Congress") (quotation omitted); *Pine Tree Medical Associates v. Secretary of Health and Human Services*, 127 F.3d 118, 212 (1st Cir. 1997) (stating that "the mere filing of an application is not the kind of completed transaction in which a party could fairly expect stability of the relevant laws as of the transaction date").

The Court recognizes that judges in this district have reached differing results;[2] district courts across the country have arrived at different outcomes;[3] and the Courts of Appeals appear conflicted on the question.[4] But the Court concludes that the decisions of the Seventh and Sixth Circuits are more persuasive.

---

[2] Compare *Cox v. Kijakazi*, No. 18-CV-2389-FYP-GMH, 2022 WL 178953, at *1 (D.D.C. Jan. 19, 2022) (concluding that the Administration must apply the regulation in effect at the time the applicant filed the claim) with *Brown v. Barnhart*, 370 F. Supp. 2d 286, 290 (D.D.C. 2005) (reversing and remanding because the ALJ did not apply the revised regulation to the applicant's claim).

[3] Compare *Tracy H. J. v. Kijakazi*, No. 3:20-CV-00564 (MHL), 2021 WL 5985125, at *10 n.10 (E.D. Va. Dec. 1, 2021) (concluding that the court must apply the regulation in effect at the time the applicant filed the claim); *Hernandez v. Saul*, No. 1:18-CV-00895-SKO, 2019 WL 2725256, at *10 (E.D. Cal. July 1, 2019); *Cantu v. Barnhart*, No. 01 CV 848 MV/RLP, 2002 WL 35649852, at *3 (D.N.M. July 29, 2002) with *Jason S. v. Kijakazi*, No. 3:20-CV-50162, 2022 WL 345092, at *2 n.3 (N.D. Ill. Feb. 4, 2022) (concluding that the court must apply the revised regulation even though it came about after the applicant filed the claim); *LaPlante v. Comm'r of Soc. Sec.*, No. 1:19-CV-947, 2020 WL 4004615, at *4 (W.D. Mich. June 5, 2020), *Adkins v. Comm'r of Soc. Sec.*, No. 6:18-CV-1958-ORL-PDB, 2020 WL 1332003, at *3 n.4 (M.D. Fla. Mar. 23, 2020); *Rowden v. Saul*, No. CIV-19-361-SM, 2020 WL 1172714, at *7 (W.D. Okla. Mar. 11, 2020); *Ray v. Comm'r of Soc. Sec.*, No. CIV-18-00638-SM, 2019 WL 1474007, at *3 (W.D. Okla. Apr. 3, 2019).

[4] Compare *McCavitt v. Kijakazi*, 6 F.4th 692, 694 (7th Cir. 2021); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) (plurality opinion) (en banc) with *Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016) (memorandum disposition); *Christie v. Comm'r of Soc. Sec. Admin.*, 267 F. App'x 146, 146–47 (3d Cir. 2008) (summary order); *Nash v. Apfel*, 215 F.3d 1337 (10th Cir. 2000).

One last note.  Courts may but need not analyze harmless error on their own accord.  *See United States v. Pryce*, 938 F.2d 1343, 1347 (D.C. Cir. 1991); *Goldstein v. Delaware Bureau of Adult Corr.*, 931 F. Supp. 284, 299 (D. Del. 1996).  Many courts have declined to decide whether a new or an old regulation governs a claimant's application because the claim fails under both, rendering application of one or the other harmless error.  *See Harrison v. Berryhill*, No. 5:17-CV-00255-FL, 2018 WL 4576782, at *5 (E.D.N.C. May 24, 2018), *report and recommendation adopted*, No. 5:17-CV-255-FL, 2018 WL 3993393 (E.D.N.C. Aug. 21, 2018); *Jeffrey v. Berryhill*, No. CV 15-15226, 2017 WL 1197830, at *5 n.2 (S.D.W. Va. Mar. 31, 2017); *see also Brown v. Berryhill*, No. CV 18-589 (RJL), 2019 WL 4538188, at *4 (D.D.C. Sept. 18, 2019) (finding the Social Security Administration's error harmless at sequential step five).  The Administration, however, has not made this argument here.  Though it is feasible that Kyler's claim fails under both the old regulation and the revised regulation, the Court declines at this time to conduct a harmless error analysis.

## IV.   The ALJ Properly Assessed Kyler's Residual Functional Capacity

Where a disability claimant does not satisfy one of the listings at step three, the ALJ will evaluate at step four the claimant's "residual functional capacity" to determine whether the claimant has the capability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  20 C.F.R. § 404.1520(a)(4)(iv); *see also* 20 C.F.R. § 404.1545(a)(1) (defining "residual functional capacity" as "the most you can still do despite your limitations").  Social Security Ruling 96–8p provides the guidelines that an ALJ uses when determining a claimant's residual functional capacity.  *See* Social Security Regulation (SSR) 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996).

SSR 96-8p requires that the ALJ assess the "exertional and nonexertional capacities of the" claimant to determine whether the claimant possesses the ability to perform certain work. *Id.* The rule states in pertinent part that an ALJ's residual-functional-capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," which includes an evaluation of the claimant's exertional ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at 34475, 34477. The ALJ need not provide a written articulation one-by-one of all seven strength demands. Rather, the ALJ's analysis will suffice so long as the Court can conclude that consideration of all the factors occurred during the process of arriving at a determination. *See Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (noting that "SSR 96–8p only requires *consideration* of all the factors, not *enumeration* of all the factors"); *Jamil D. v. Kilolo Kijakazi*, No. 21-CV-464 (GMH), 2022 WL 910334, at *9 (D.D.C. Mar. 29, 2022) (noting some disagreement about whether an ALJ must conduct a written articulation of all seven strength demands). What's more, the ALJ's residual-functional-capacity assessment must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." 61 Fed. Reg. 34474, 34478. Put another way, the ALJ "must build a 'logical bridge' from the evidence to his conclusion." *Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (quotation omitted).

The Court concludes that substantial evidence supports the ALJ's determination that Kyler has the residual functional capacity to perform some sedentary work. The ALJ analyzed Kyler's "subjective statements, objective medical evidence, opinion evidence, and other evidence of record" when deciding whether Kyler had the residual functional capacity to perform limited

sedentary work.  AR at 1202.  In particular, the ALJ evaluated clinical findings of Kyler's care providers, unpacking in-depth Kyler's hospital visits, her impairments, and her symptoms.  *Id.* at 1199.  The ALJ also analyzed medical opinion evidence, including the opinion of Kyler's primary care physician, Adebola Rojugbokan.  *Id.* at 1202.  And at the administrative hearing, the ALJ asked a vocational expert whether a hypothetical individual with Kyler's vocational profile could perform limited sedentary work.  *Id.* at 1239.  The vocational expert responded in the affirmative, stating that such an individual could perform Kyler's past relevant work as a school secretary.  *Id.* at 1242.  The ALJ referenced this back-and-forth questioning in his analysis.  *Id.* at 1202.  All in all, the ALJ formulated a residual-functional-capacity assessment that accounted for Kyler's functional limitations, her subjective complaints, the objective medical evidence, and the medical opinions of record.  In other words, the Court concludes that the ALJ built a logical bridge from the record evidence to his conclusion, providing a narrative that described how the evidence supported the finding that Kyler could perform a narrow range of sedentary work.  *See Cunningham v. Colvin*, 46 F. Supp. 3d 26, 36 (D.D.C. 2014) (noting that "the Court's review of the record shows that the findings and analysis in the ALJ's residual functional assessment involved a sufficient discussion of the relevant evidence, including which was credited and which was rejected").

      Kyler argues that the ALJ failed to address a combination of her impairments, but rather focused on her impairments in isolation.  *See generally* Pl.'s Opp'n to Def.'s Mot. for Judgment, ECF No. 16.  The record reflects a different reality.  The ALJ found that Kyler's "medically determinable *impairments* could reasonably be expected to cause some but not all of the alleged symptoms."  AR at 1199 (emphasis added).  The reference to the plural *impairments* comes after the ALJ acknowledged that Kyler had claimed to suffer from a variety of impairments, including

to name a few sarcoidosis, obesity, asthma, carpal tunnel syndrome, and depression. *Id.*  In addition, the ALJ concluded that "objective medical evidence, opinion evidence, and other evidence of record" failed to support Kyler's claim that "her *impairments*" kept her from performing limited sedentary work. *Id.* at 1202 (emphasis added).  The Court finds that substantial evidence supports the conclusion that the ALJ evaluated the effect of Kyler's impairments in combination as well as in isolation.

Kyler further contends that the ALJ failed to address Kyler's "ability to perform work activities eight hours per day, five days per week."  Pl.'s Mot. at 16.  That contention conflicts with the record, which shows that the ALJ considered Kyler's past relevant work and concluded "that an individual with the claimant's residual functional capacity could perform her past work as a school secretary as generally performed."  AR at 1203.  The ALJ also concluded that Kyler could perform such work even with certain environmental limitations. *Id.*

Kyler also claims that the ALJ had to perform "a function-by-function assessment of a claimant's ability to perform the physical and mental demands of work."  Pl.'s Mot. at 12.  The Court rejects that one-by-one, function-by-function reading of the regulation.  Instead, the Court joins other courts "in concluding that a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand."  *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (noting that at least the Second, Fourth, Eighth, Ninth, and Tenth Circuits do not require seven-part function-by-function written account).  As stated previously, the ALJ's analysis will suffice so long as the Court can conclude that consideration of all the factors occurred during the process of arriving at a determination. *See Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (noting that "SSR 96–8p only requires *consideration* of all the factors, not *enumeration* of all the factors").

## V.      Conclusion

For the foregoing reasons, the Commissioner of Social Security's motion for judgment of affirmance is **GRANTED** and Wanda Kyler's motion for judgment of reversal is **DENIED**.  An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  April 20, 2022

_____
CARL J. NICHOLS
United States District Judge